## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

MARIBEL HEISLEY and STEPHEN )
ANDREW HEISLEY, )
                         )
            Plaintiffs, )
                         )
and )
                         )
UNITED STATES OF AMERICA, )
                         )        Case No. 1:10-cv-714-LMB/IDD
        Plaintiff-Intervenor, )
                         )
        v. )
                         )
INOVA HEALTH SYSTEM, )
8110 Gatehouse Road )
Falls Church, VA 22042 )
                         )
        Defendant. )
                         )
                         )
_____ )

## CONSENT DECREE

      A.      The parties to this Consent Decree ("Decree") are Plaintiffs Maribel Heisley and

Stephen Andrew Heisley (collectively, "Private Plaintiffs"), Plaintiff-Intervenor the United

States of America (the "United States"), and Inova Health System ("Defendant"), a private, non-

profit organization that operates a health care system consisting, inter alia, of hospitals and other

health services, including Inova Fairfax Hospital, located at 3300 Gallows Road, Falls Church,

Virginia (hereinafter, "Inova Fairfax" or "Hospital").

B.      On June 25, 2010, Private Plaintiffs filed this lawsuit against Defendant Inova Health System.  Private Plaintiffs alleged, inter alia, that Defendant Inova Health System, by and through medical personnel at Inova Fairfax Hospital, failed to provide them with sign language interpreters and otherwise failed to effectively communicate with them in violation of title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12181-12189, and Section 504 of the Rehabilitation Act of 1973 ("Section 504 of the Rehabilitation Act"), 29 U.S.C. § 794.  Private Plaintiffs demand, among other things, monetary damages, injunctive relief, and attorneys' fees.

C.      Prior to filing the lawsuit, Private Plaintiffs advised the United States Department of Justice (the "Department") of the allegations, and the Department initiated its own investigation.  The Department is authorized to investigate alleged violations of title III of the ADA, and to bring a civil action on behalf of the United States in federal court if the Attorney General has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of discrimination or any person or group of persons has been discriminated against and such discrimination raises an issue of general public importance, 42 U.S.C. § 12188(b)(1)(B).

D.      The United States filed a complaint in intervention in this lawsuit against Inova Health System alleging that Inova Health System violated title III of the ADA, 42 U.S.C. §§ 12181-12189, and its implementing regulation, 28 C.F.R. §§ 36.101-36.608, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

E.      This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 12188.  The parties agree that venue is appropriate.

2

F.   Defendant owns and operates Inova Fairfax Hospital, making the Hospital a place of public accommodation. 42 U.S.C. § 12182(a); 42 U.S.C. § 12181(7)(F).

. G.   Private Plaintiffs and the United States claim that Defendant is a recipient of federal financial assistance and is covered by Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

H.   The ADA prohibits public accommodations, including hospitals, from discriminating against an individual on the basis of disability in the full and equal enjoyment of its goods and services. 42 U.S.C. § 12182(a).  Ensuring that hospitals afford full and equal enjoyment of their goods, services, facilities, privileges, advantages, or accommodations to persons who are deaf or hard of hearing is an issue of general public importance. 42 U.S.C. § 12188(b)(1)(B).  The Attorney General has concluded that there is reasonable cause to believe that Defendant has engaged in a pattern or practice of discrimination under title III of the ADA, 42 U.S.C. § 12188(b)(1)(B)(i).  Defendant denies that there is a basis for finding reasonable cause.

I.   Section 504 of the Rehabilitation Act provides that no qualified individual with a disability "shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794.

J.   On April 9, 2007, the Department of Justice, on behalf of the United States, entered into a settlement agreement with Inova Health System, effective through October 2009, to resolve allegations that the Hospital failed to provide appropriate auxiliary aids and services, including qualified sign language interpreters, when necessary for effective communication ("Settlement Agreement").

3

K.     Defendant denies the allegation that it violated title III of the ADA and Section 504 of the Rehabilitation Act by failing to provide sign language interpreters where necessary for effective communication, to Private Plaintiffs, who are deaf, during hospital visits from June 2009 to August 2009.  Defendant further denies that Private Plaintiffs were not afforded the full and equal enjoyment of the services, privileges, facilities, advantages, and accommodations of Inova Fairfax as required by the ADA and the Rehabilitation Act.  Moreover, Defendant disputes that it is subject to the requirements of Section 504 in this case.

L.     As a result of ongoing discussions, the Private Plaintiffs, the United States, and Defendant agree that it is in all parties' best interest, and the United States believes that it is in the public interest, to resolve this lawsuit on mutually agreeable terms without further litigation. Accordingly, the parties agree to the entry of this Consent Decree without trial or further adjudication of any issues of fact or law raised in the Private Plaintiffs' and the United States' Complaints.

In resolution of this action, the parties hereby **AGREE** and the Court expressly **APPROVES, ENTERS, AND ORDERS** the following:

## I. DEFINITIONS

A.     The term "auxiliary aids and services" may include but is not limited to: qualified interpreters on-site or through video remote interpreting (VRI) services; notetakers; real-time computer-aided transcription services; written materials; exchange of written notes; telephone handset amplifiers; assistive listening devices; assistive listening systems; telephones compatible with hearing aids; closed caption decoders; open and closed captioning, including

4

real-time captioning; voice, text, and video-based telecommunications products and systems,

including text telephones (TTYs), videophones, and captioned telephones, or equally effective

telecommunications devices; videotext displays; accessible electronic and information

technology; or other effective methods of making aurally delivered information available to

individuals who are deaf or hard of hearing.  28 C.F.R. § 36.303(b)(1) (effective March 15,

2011).

        B.      The term "Companion" means: a person who visits and/or accompanies a patient

in the Hospital, is deaf or hard of hearing, and is either (a) a person whom the patient, or

circumstances, indicates should communicate with hospital personnel about the patient,

participate in any treatment decision, play a role in communicating the patient's needs, condition,

history or symptoms to hospital personnel, or help the patient act on the information, advice or

instructions provided by hospital personnel, as permitted by federal and applicable state laws

governing medical decision-making, privacy and confidentiality; (b) a person legally authorized

to make health care decisions on behalf of a patient, including but not limited to a legal guardian;

or (c) such other person with whom the hospital personnel would ordinarily and regularly

communicate concerning the patient's medical condition and medical advice, including the

patient's next of kin or health care surrogate.  When the term "companion" is not capitalized, it

shall have its ordinary meaning and shall include the individuals covered in the definition of

"Companion" in this Paragraph, whether they be hearing impaired or not.  Disclosure of

confidential medical information to a companion concerning a patient will occur only to the

extent that such disclosure is permitted under the Health Insurance Portability and Accountability

Act ("HIPAA"), privacy rules, and other applicable laws governing the privacy and

confidentiality of patient information.  Whenever the Hospital is required to consult, interview,

or otherwise take into account the wishes of a Companion under this Decree, and the Companion is a minor, the Hospital shall take the required action as if the patient who the Companion is visiting or accompanying is the Companion (i.e., the patient makes the request for auxiliary aids on behalf of the Companion). The term "Companion" shall not include visitors who do not fulfill the roles set forth in this Paragraph.

C.      The term "Hospital Personnel" means: all employees and officers of Inova Fairfax, including, without limitation, nurses, physicians, social workers, technicians, admitting personnel, billing staff, and therapists.

D.      The term "non-scheduled incidents" are situations in which there are fewer than two hours between the time when a "Patient" or a "Companion" (as defined in this Decree) makes a "request" (as defined in this Decree) for an interpreter and the time when the services of an interpreter are desired. If the request for an interpreter is made between 10:00 p.m. and 7:00 a.m. or on holidays, the term "non-scheduled incidents" are situations in which there are fewer than three hours between the time when a "Patient" or a "Companion" (as defined in this Decree) makes a "request" (as defined in this Decree) for an interpreter and when the services of the interpreter are desired. The term "scheduled incidents" are appointments or situations in which there are two or more hours between the time when a "Patient" or a "Companion" (as defined in this Decree) makes a "request" (as defined in this Decree) for an interpreter and when the services of the interpreter are desired, except that if the request for an interpreter is made between 10:00 p.m. and 7:00 a.m. or on holidays, the term "scheduled incidents" are appointments or situations in which there are three or more hours between the time when a "Patient" or a "Companion" (as defined in this Decree) makes a "request" (as defined in this Decree) for an interpreter  and when the services of the interpreter are desired.

6

E.     The term "Patient" means: a person who is deaf or hard of hearing and is seeking

and/or receiving medical services at Inova Fairfax.  When the word "patient" is not capitalized, it

shall have its ordinary meaning and shall include all patients, whether they be hearing impaired

or not.  Whenever the Hospital is required to consult, interview, or otherwise take into account

the wishes of a Patient under this Decree, and the Patient is a minor or relies upon others to make

decisions about medical care for himself or herself, the Hospital shall take the required action as

if the Patient's adult guardian is the Patient (i.e., the adult guardian makes the requests for

auxiliary aids on behalf of the minor Patient), unless the Patient is otherwise by law competent to

consent to treatment.

F.     The term "request," for purposes of the timetables and obligations in Section I

(definition of "non-scheduled" and "scheduled" incidents) and Sections II(4) and (7) of this

Decree, shall mean (a) a request for auxiliary aids or services made by the completion[1] of a Deaf

or Hard of Hearing Request Form, (b) circumstances that indicate that a patient is deaf or hard of

hearing and that the Patient would like or would benefit from an interpreter, but a Deaf or Hard

of Hearing Request Form cannot be completed by or on behalf of the Patient due to exigent

circumstances (e.g., incapacitation of a non-minor Patient), or (c) instances involving a request

made from a location other than at the Hospital, when Hospital Personnel in the patient's

relevant unit (including Emergency Department) are informed -- or the Patient or Companion, or

someone on their behalf, informs non-medical staff whose responsibilities include scheduling

interpreter services -- of a Patient's or Companion's desire for an on-site interpreter or other

auxiliary aid.

---

[1] Completion includes presenting or delivering the Form to Hospital staff in registration or in the
patient's unit, or to whomever has provided the Patient and/or Companion with the Form.

G.      The term "sign language interpreter," "oral interpreter," or "interpreter" means: an interpreter who is able to interpret effectively, accurately and impartially, both receptively and expressively, using any specialized terminology necessary for effective communication with a "Patient" or a "Companion" who is deaf or hard of hearing.  Someone who has only a rudimentary familiarity with sign language or finger spelling is not an "interpreter" under this Decree.  Likewise, someone who is fluent in sign language but who does not possess the ability to process spoken communication into the proper signs or to observe someone signing and change their signed or finger spelled communication into spoken words is not an interpreter. Interpreter services, for purposes of this Decree, do not include foreign sign language interpretation.  Interpreter services, along with other auxiliary aids, are to be offered free of charge; however, nothing in this Decree shall prohibit the Hospital from seeking reimbursement for the cost of interpreter services from a third-party payor, to the extent allowed by applicable law.

H.      The term "TTY's" or "TDD's" means: devices that are used with a telephone to communicate with persons who are deaf or hard of hearing by typing and reading communications.

I.      The term "video remote interpreting" (VRI) means: an interpreting service that uses video conference technology over dedicated lines or wireless technology offering high-speed, wide-bandwidth video connection that delivers high-quality video images as provided in 28 C.F.R. § 36.303(f) (as effective March 15, 2011).

J.      The term "videophone" means: a telephone with a video screen capable of full duplex (bi-directional), high-quality video and audio transmissions for visual, real-time communication.

## II. TERMS

1.   Effective Communication and Equal Access

The Hospital shall provide appropriate auxiliary aids and services, including interpreters, where such auxiliary aids and services are necessary to ensure effective communication with persons who are deaf or hard of hearing, and it shall provide persons who are deaf or hard of hearing with the full and equal enjoyment of the services, privileges, facilities, advantages, and accommodations of Inova Fairfax as required by this Decree, the ADA, and Section 504.[2]  In furtherance of this commitment, Inova Fairfax shall implement and follow the requirements set forth below within ninety (90) days of entry of this Decree, except where a particular provision sets forth a different deadline.

2.   Patient Intake

A.  As part of its patient registration process, Inova Fairfax shall inquire into whether the patient and/or the patient's accompanying companion(s) is/are deaf or hard of hearing, and whether the patient expects to have any companion visit who is deaf or hard of hearing.  The patient registration process shall occur at the first reasonable opportunity to interact with a patient at the Hospital or the first medically prudent opportunity thereafter.

---

[2] Nothing in this Decree shall require the Hospital to provide auxiliary aids or take other steps that would otherwise be required hereunder in circumstances where a Patient or Companion voluntarily and expressly declines auxiliary aids or services, or voluntarily and expressly fails or refuses to cooperate in providing information needed by the Hospital to carry out its obligations under the Decree (e.g., where a Patient refuses to complete the Deaf or Hard of Hearing Communication Request Form); in such instances, the Hospital's obligations shall commence when the Patient or Companion makes a request as defined herein, provides the necessary information, or indicates that he would like or would benefit from auxiliary aids or services. Moreover, a Patient and/or Companion, at their own volition, may postpone certain timeframes under this Decree (e.g., creation of a Schedule) as they apply to the Patient and/or Companion. Under such circumstances, the timeframes set forth in this Decree shall commence as soon thereafter as the Patient and/or Companion indicates.

B. If there is any indication from such inquiry, or from Hospital Personnel's observations or interactions with the patient or the patient's companion(s) present in the Hospital, that they may be deaf or hard of hearing, Hospital Personnel shall immediately (or as soon as practicable thereafter in emergent/traumatic circumstances involving the patient or in situations in which Hospital Personnel attending to the patient or companion must give priority to other patients' care due to emergent/traumatic circumstances and no one else in the patient's relevant unit is immediately available who is able to assist) provide the patient and/or the companion with a Deaf or Hard of Hearing Communication Request Form ("Form"), whether in paper or electronic form. See attached Exhibit A.[3] The Form shall be filled out by either the Patient and/or the Companion, or may be completed by Hospital Personnel based on the information provided by those individuals. The Hospital shall ensure that a completed Form is obtained from each individual Patient or Companion who agrees to complete the Form. After being completed, the Form(s) shall be maintained in the patient's medical chart, whether kept in paper or electronic form.

C. If a patient identifies a Companion who is not presently at the Hospital but is expected at the Hospital during the patient's stay, Hospital Personnel shall provide the patient with the contact information of Hospital Personnel who can assist the Companion in completing a Deaf or Hard of Hearing Communication Request Form in advance of arriving at the Hospital and with the contact information of Hospital Personnel who can assist the Companion in completing the Form at the Hospital (if the Form is not completed in advance). If at any point during a patient's stay, a Companion identifies himself or herself as deaf or hard of hearing, the Hospital shall promptly provide him/her with the Form, if it has not done so already.

---

[3] The Hospital is not required to provide a Form to a deaf companion if the patient has indicated that the deaf companion does not fall within the definition of a "Companion" as set forth in Paragraph I.B of this Decree.

10

D.  In the event that circumstances indicate that a patient is deaf or hard of hearing, but a Form cannot be completed by or on behalf of the patient due to exigent circumstances (e.g., incapacitation of non-minor Patient), Hospital Personnel shall promptly comply with the requirements set forth in Paragraph 3(A), below and shall facilitate completing the Form as soon as practicable thereafter.

E.  The patient's medical chart shall be conspicuously labeled (such as with a sticker, indicator, or label on the cover) to alert Hospital Personnel to the fact that the Patient and/or Companion is deaf or hard of hearing.  The chart shall indicate the mode of communication requested by and provided to the Patient and/or Companion.

3.  <u>Provision of Interpreter</u>

A.  <u>Contacting the Scheduler</u>

1.  Upon (i) completion of the Deaf or Hard of Hearing Communication Request Form requesting an on-site interpreter or (ii) other "request" as defined in this Decree, Hospital Personnel shall promptly contact (within fifteen (15) minutes of completion of the Form or the "request") the Scheduler identified in Paragraph 5(A) via phone, facsimile, e-mail, or other generally accepted means of communication to request the provision of an interpreter.  In the case of an unforeseen medical emergency affecting the patient or other patients in the area requiring the immediate attention of the Hospital Personnel involved in processing the Patient's or Companion's Form, the Scheduler identified in Paragraph 5(A) shall be contacted as soon as practicable (within fifteen (15) minutes of stabilizing the patient or resolution of the other emergent/traumatic event(s)).

2.  In the event that circumstances indicate that the patient is deaf or hard of hearing but a Form cannot be completed by or on behalf of the Patient due to exigent

11

circumstances (e.g., incapacitation of a non-minor Patient), Hospital Personnel shall promptly contact the Scheduler identified in Paragraph 5(A) to request the provision of an on-site interpreter, provided that there is some indication that the Patient would like or benefit from an on-site interpreter, or Hospital Personnel may arrange for VRI as permitted in Paragraph 5(C).

       3. If the Patient's circumstances prevent the Form from being completed and the Hospital has decided in the interim not to provide the Patient an on-site interpreter, then within fifteen (15) minutes of stabilizing a conscious Patient, the Patient regaining consciousness, or the resolution of other emergent/traumatic event(s) that the Patient is experiencing, the Hospital shall follow the procedures set forth above in Paragraph 2, including providing a Deaf or Hard of Hearing Communication Request Form, and in Paragraph 3(A)(1) for contacting the Scheduler to request the provision of an on-site interpreter, if one is requested.

       B. Upon being contacted, the Scheduler shall arrange for the interpreter requested according to Paragraph 3 and the timetable set forth in Paragraph 4(A). When requesting any on-site interpreter, the Scheduler shall follow the procedures set forth in Paragraph 5. The Hospital shall not be bound by the personal preferences of the Patient and/or Companion for a particular, named interpreter absent medical necessity. The Hospital shall provide such interpreters according to Paragraph 3 and the timetable set forth in Paragraph 4(A).

       C. In the instances in which an interpreter has been provided, Hospital Personnel shall interview the Patient or, assuming such person has remained at the Hospital and is available to Hospital Personnel, the Companion (or both, if both are hearing impaired), with the use of the interpreter, if an interpreter has been requested, within no more than ninety (90) minutes after the interpreter has been provided (or within fifteen (15) minutes of stabilizing a conscious Patient, the Patient regaining consciousness, or the resolution of other emergent/traumatic event(s) that

the Patient or others served by the Hospital Personnel attending to the Patient or Companion are experiencing), in order to determine the interpreter schedule over the anticipated duration of the patient's Hospital stay. If the Companion is not available for such interview, Hospital Personnel shall interview the Companion as soon as practicable upon becoming aware of his or her return to the patient's location in the Hospital. Such schedule shall be created based exclusively on the Patient's or Companion's wishes (or the respective wishes of each, if both are hearing impaired), except as provided in Paragraph 3(I).

D. If the patient is expected to be in the Hospital more than three hours, but fewer than forty-eight (48) hours, the Hospital may use the Interpreter Schedule, attached hereto as Exhibit B, to document the requested schedule, but is not required to do so.

E. If the patient is expected to be in the Hospital forty-eight (48) hours or more and on-site interpreter services are provided, the schedule of such services shall be reduced to writing on the Interpreter Schedule. The Interpreter Schedule(s) shall identify the schedule of interpreters for each day that the patient is expected to be in the Hospital. The Interpreter Schedule shall be documented in writing as soon as practicable after it is determined that the patient's stay in the Hospital will extend more than forty-eight (48) hours, but in no event shall such documentation occur more than forty-eight (48) hours after the patient's arrival to the Hospital, except as extended in Paragraph 3(F). When completing the Interpreter Schedule, Hospital Personnel shall assist the Patient and/or Companion by providing the following information (to the extent that it is both reasonably ascertainable and allowed under HIPAA and other applicable laws):

(i)     the anticipated period of time that the patient will be in the Hospital;

(ii)    the nature of the patient's condition, including its seriousness and stability;

(iii)    the likelihood of Hospital Personnel or other medical personnel needing to communicate with the Patient or Companion at unexpected or unforeseen times;

(iv)    the most common hours that Hospital Personnel or other medical personnel will need to communicate with the Patient or Companion;

(v)    the availability of 24-hour interpreter services free of charge; and

(vi)    other assistive devices which may be available.

In no way shall Hospital Personnel attempt to discourage or dissuade Patients or Companions from requesting an interpreter or a desired schedule(s). The simple provision of the information listed immediately above shall not be construed as an attempt to discourage or dissuade Patients or Companions from requesting an interpreter or desired schedule(s). The Hospital shall instruct non-employee medical personnel (1) not to discourage or dissuade Patients or Companions from requesting an interpreter or a desired schedule(s), and (2) to refer any issues or matters regarding auxiliary aids or services to Hospital Personnel.

F. If a patient whom the Hospital earlier anticipated would be in the Hospital for fewer than forty-eight (48) hours ultimately stays for forty-eight (48) hours or more, the Hospital shall follow the procedures set forth in Paragraph 3(E), above, within sixty (60) minutes of the patient's forty-eighth (48th) hour or as soon thereafter as the patient's medical circumstances or the Companion's circumstances (e.g., if the Companion is no longer present at the Hospital) permit.

G. The Patient and/or Companion shall be asked to sign and date each Interpreter Schedule that is created for that individual. The Interpreter Schedule(s) shall be maintained in the patient's medical chart, whether such chart is maintained in paper or electronic form, and the

Patient and/or Companion shall be provided with a copy of their Interpreter Schedule or reasonable facsimile thereof either in paper or electronic form.

H. Throughout the patient's stay, if such stay is forty-eight (48) hours or more, Hospital Personnel shall consult with the Patient or Companion periodically to assess the effectiveness of the Interpreter Schedule and to update or modify it, if such modifications are requested or necessary. Any modifications to the Interpreter Schedule shall be based exclusively on the Patient's and/or Companion's desires, except as provided in Paragraph 3(I) below. Each time a Patient and/or Companion is consulted regarding modifications or updates to their Interpreter Schedule, Hospital Personnel shall provide the Patient and/or Companion with the latest information contemplated by Paragraph 3(E)(i)-(vi). Any time a change is made to the Interpreter Schedule, a notation will be made and the Patient and/or Companion shall be asked to sign and date the document, and the document shall be maintained in the patient's medical chart.

I. The Hospital shall provide an interpreter in conformance with the Patient's and/or Companion's request as expressed in the interview contemplated by Paragraph 3(C) (if the patient is expected to be in the Hospital fewer than forty-eight (48) hours) or as identified in the Interpreter Schedule. It shall be the responsibility of Hospital Personnel to contact the Scheduler identified in Paragraph 5(A) to set up such interpreter services. Where a Patient's and/or Companion's request for interpreter services is clearly unreasonable in relation to, or clearly incongruent with, the situation presented by the patient's medical condition and course of treatment, the Hospital may provide interpreter services other than as requested or may utilize other auxiliary aids and services – but not other than what is required for effective communication – after first consulting with the Hospital's Sign Language Services Manager and/or other designated individuals and informing the Department of Justice via electronic mail.

Under such circumstances, the Hospital shall document the deviation from the requested interpreter services, the justification for the deviation, and the extent of such deviation (and shall include all of such information, as well as any other relevant information, in its electronic mail to the Department of Justice). Such documentation must also be kept in the patient's medical chart.

J. If a Patient and/or Companion does not request or refuses an interpreter but Hospital Personnel have reason to believe that such person would benefit from one, Hospital Personnel shall remind the individual that interpreters are available free of charge. The Hospital may elect to schedule an interpreter if deemed necessary by medical staff.

K. If a Patient and/or Companion indicates to Hospital Personnel that he or she wants an interpreter after failing to request one on the Deaf or Hard of Hearing Communication Request Form, Hospital Personnel shall provide the Patient or Companion with a new Deaf or Hard of Hearing Communication Request Form. Hospital Personnel shall then comply with the requirements of Paragraphs 2 and 3 as if the Patient or Companion had originally requested an interpreter. Both the original Deaf or Hard of Hearing Communication Request Form and the new one shall be kept in the patient's medical chart.

L. If a Patient or Companion has an ongoing relationship with the Hospital involving successive scheduled visits to the Hospital (scheduled or anticipated prior to the patient's discharge from a prior visit), and requests an interpreter or other auxiliary aids for subsequent visits to the Hospital, the Hospital shall take steps to expedite the procedures for providing an interpreter or other auxiliary aid without necessarily requiring a separate request or the completion of a new Deaf or Hard of Hearing Communication Request Form for each successive visit.

4.     Timetable for Auxiliary Aids

  A.  The Hospital shall provide the Patient and/or Companion with interpreters, as

required under this Decree, in a timely manner, according to the timetable set forth in the chart

below.

| Auxiliary Aid | Time for Providing It |
|---|---|
| Interpreter/VRI | For non-scheduled incidents, the Hospital shall provide an interpreter no more than (a) two hours (or three hours if the request is made between the hours of 10:00 p.m. and 7:00 a.m., or on holidays) from the time the Patient and/or Companion requests (as defined by this Decree) an interpreter if the service is provided through a contracted service or through an interpreter who is located off of the Hospital premises at the time the request arises, or (b) 30 minutes from the time the Patient and/or Companion requests (as defined by this Decree) an interpreter if the service is provided through VRI or through an interpreter who is located on the Hospital premises at the time the request arises and the interpreter is confirmed to be available.

For scheduled incidents, the Hospital shall provide an interpreter at the time of the scheduled incident.

Any response time that is delayed from the times set forth above because of a force majeure event is excluded from a determination of whether the prescribed response time has been met. Force majeure events are events outside the reasonable control of the Hospital, its IS Provider(s), or the interpreter called to respond, and include but are not limited to severe weather problems and other Acts of God, unanticipated illness or injury of the interpreter while en route to the Hospital, and unanticipated transportation problems (e.g., mechanical failure of the interpreter's automobile, automobile accidents, and extraordinary roadway obstructions) and similar emergencies, not to include routine traffic or congestion.  In such instances, the Hospital shall make its best efforts to ensure prompt, effective communication by, for example, immediately contacting the Scheduler and/or IS Provider in an attempt to secure another interpreter. |

  B.  The Hospital shall provide other auxiliary aids, among those identified in the

attached Deaf or Hard of Hearing Communication Request Form, no later than 30 minutes after

the request is made. If the Hospital fails to provide a requested auxiliary aid or if it provides one outside of the required time period, the Hospital shall keep a record of such incident, including the date and time that it occurred, the name of the patient and, if applicable, the Companion involved, and an explanation for the delay or refusal.

C.       Whenever VRI is provided or used, the Hospital shall comply with 28 C.F.R. 36.303(f) (as effective March 15, 2011). The Hospital shall ensure that appropriate Hospital personnel be trained, available, and able to operate and connect the VRI system quickly and efficiently. Training shall include attention to the limitations of VRI technology, such as with respect to (i) Patients who have limited ability to move their heads, hands, or arms; vision problems; cognitive or consciousness issues, or pain issues; (ii) patients who may be moved to areas of the Hospital that do not have readily accessible high speed internet access; and (iii) patients who will be treated in rooms where space considerations render difficult the use of this service.

5.       <u>Procedures for Securing an On-Site Interpreter</u>

A. The Hospital shall designate one telephone number as the exclusive interpreter request line. An individual with the capacity to initiate the scheduling of interpreters ("Scheduler") shall respond to telephone calls on this telephone line twenty-four (24) hours per day, seven (7) days per week. Hospital Personnel shall be instructed that contacting the Scheduler on the interpreter request line is the primary method for securing interpreters. Hospital Personnel may use their best judgment to respond to circumstances as they arise to secure interpreters through other means, if necessary.

B. The Hospital shall maintain at least one contract with an interpreter service provider ("IS Provider") to provide interpreters at the request of the Hospital. In addition to utilizing a

18

contracted IS Provider, the Hospital may utilize its own pool of interpreters or staff (who satisfy the definition of a "sign language interpreter," "oral interpreter," or "interpreter" in this Decree, supra) to satisfy a request for an interpreter.

   C. The Hospital and IS Provider may contract to provide on-site interpreters or interpretive services through VRI. If at any point a Patient and/or Companion expresses a preference for an on-site interpreter instead of VRI, however, Hospital Personnel shall give consideration to such preference. The Hospital may only use VRI: (i) while Hospital Personnel are waiting for an on-site interpreter to arrive, (ii) if the duration of the patient's stay is expected to be under four (4) hours, (iii) if a need to communicate with a Patient and/or Companion who has expressed a preference for an on-site interpreter arises outside of the Patient's and/or Companion's Interpreter Schedule; or (iv) if the duration of the patient's stay is expected to be or is four (4) hours or more and either (a) the patient has not expressed a preference for an on-site interpreter or (b) the Patient's and/or Companion's expressed preference for an on-site interpreter is given substantial deference, and VRI provides communication that is substantially equal in effectiveness to that provided by an on-site interpreter.[4] When on-site interpreter services are being secured or are required, the timetable for providing on-site interpreter service set forth in Paragraph 4(A) shall apply and shall begin to run when the Patient and/or Companion makes such a preference known. If, based on the circumstances (or feedback from the Patient and/or Companion, except as provided in Paragraph 3(I)), VRI is not providing effective

---

[4] Providing substantial deference for an expressed preference means that the Patient and/or Companion's preference for an on-site interpreter will presumptively and ordinarily be honored absent substantial grounds for the Hospital to continue using VRI rather than securing an on-site interpreter. If a Patient and/or Companion has requested the use of more than one communication aid on the Deaf or Hard of Hearing Communication Request Form and not indicated any preference, and one of these communication aids is an on-site interpreter, the Hospital will seek clarification from the Patient and/or Companion on their preference, if any, when accepting the Form and shall make a record of such in the Form.

communication after VRI has been provided, VRI shall not be used as a substitute for an on-site interpreter, and an on-site interpreter shall be provided in accordance with the timetable set forth in Paragraph 4(A). In situations where VRI is not providing effective communication, the time periods for securing an on-site interpreter provided in this Decree shall apply and shall begin to run when the Hospital is informed, knew, or reasonably should have known of the ineffectiveness of VRI; in addition to these time constraints, the Scheduler shall employ best efforts to expedite the provision of on-site interpreter services under these circumstances.

D. When the Scheduler receives an interpreter request for a non-scheduled incident, the Scheduler may choose to attempt to fill the request by first using Hospital staff or the Hospital's own pool of interpreters. If the Scheduler chooses to do so, the Scheduler shall have twenty (20) minutes from the time that he or she receives the request for an interpreter to identify an available interpreter. If after twenty (20) minutes the Scheduler cannot identify an available interpreter from Hospital staff or from the Hospital's pool of interpreters, the Scheduler shall refer the request to the IS Provider. If there are multiple interpreters available to fill the request, the Scheduler shall determine which interpreter will be assigned to fill the request, giving preference to the interpreter with the shortest estimated time of arrival, unless both interpreters are available within substantially similar time periods (i.e., within twenty (20) minutes of each other). Regardless of what resource is used to supply the interpreter, the interpreter shall be provided to the Patient or Companion within the time frame set forth in Paragraph 4.

E. When the Scheduler receives an interpreter request for a scheduled incident, the Scheduler may fill such request using any resource at its disposal. Regardless of what resource is used to supply the interpreter, the interpreter shall be provided to the Patient or Companion within the time frame set forth in Paragraph 4.

20

F. The Scheduler shall be trained on how to respond to requests for non-interpreter auxiliary aids and shall refer such requests to the appropriate Hospital Personnel.

6.      Interpreter Continuity

All interpreters who provide interpreter services for the Hospital, whether they are from the IS Provider, the Hospital's pool of interpreters, or Hospital staff, shall be directed by the Hospital to provide – to the extent practicable and to the extent permissible under applicable ethics guidelines and the law, including but not limited to HIPAA – replacement interpreters for the same Patient and/or Companion with general background information on the patient's condition, medical terms that are often used, and other relevant information to make communication with the replacement interpreter easier for the Patient and/or Companion.

7.      Maintenance Log

The Hospital shall maintain a log of each request for interpreter services with the following information:

> (a) the patient's and, if applicable, the Companion's name;
>
> (b) the time and date of the scheduled appointment or the words "non scheduled appointment" if no scheduled appointment applies to the request;
>
> (c) the time and date that the request (as defined by this Decree) for an interpreter service was made;
>
> (d) the type of interpreter service provided, i.e., whether it was an on-site interpreter, an off-site interpreter, or VRI; and
>
> (e) the time and date the interpreter service was actually provided or a statement that the interpreter service was not provided.

In addition, the Hospital shall include the documentation required by Paragraph 3(I) involving deviations from requested interpreter services.  Such logs shall be maintained by the Hospital for the Term of the Decree (as defined herein, infra).

8.      Complaint Resolution

The Hospital shall maintain an effective complaint resolution mechanism for use by patients and/or companions and will maintain records of all complaints (whether oral or written) made to the Hospital regarding the provision of auxiliary aids and/or regarding the communication needs or desires of Patients or Companions.  The Hospital shall further maintain records of any actions taken with respect thereto.  The Hospital shall notify (1) Patients, (2) Companions who complete a Deaf or Hard of Hearing Services Request Form, and (3) other persons who are deaf and hard of hearing and express a complaint about auxiliary aids or services or related procedures, of the Hospital's complaint resolution mechanism, to whom complaints should be made, and the right to receive a written response to the complaint if requested.  Such information shall be provided in writing.  Copies of all complaints or notes reflecting oral complaints and the responses thereto shall be maintained by the Hospital for the Term of the Decree (as defined herein, infra).  Upon request, the Hospital shall provide the complaining party a written response to the complaint in a timely manner.

Within five (5) business days of receipt of any complaint related to auxiliary aids or interpreter services, and/or any complaint related to the communication needs or desires of Patients and/or Companions, the Hospital shall send an electronic message to the Department of Justice, at the email addresses for Department of Justice attorneys below, with a copy of such complaint or, if an oral complaint was made, a description of the complaint.

9.      Prohibition of Surcharges

All auxiliary aids required by this Decree shall be provided free of charge to the patient and/or companion.

10.      Notice to Patients and Companions

As soon as practicable after Hospital Personnel have determined that an interpreter should be provided to a Patient and/or a Companion, the Hospital shall update such person of the current status of efforts being taken to secure an interpreter on his or her behalf. Additional updates are to be provided thereafter as necessary until an interpreter is secured. Notification of efforts to secure a qualified interpreter does not lessen the Hospital's obligation to provide qualified interpreters in a timely manner as required by this Decree.

11.      Other Means of Communication

Between the time that an interpreter is requested and when an interpreter is made available, the Hospital shall continue to try to communicate with the Patient or Companion for such purposes and to the same extent as they would have communicated with the person but for the disability, using all available methods of communication (including, but not limited to, written notes) if VRI is not available. This provision in no way lessens the Hospital's obligation to provide qualified interpreters in a timely manner as required by this Decree for other communications with the Patient and/or Companion.

12.      Restricted Use of Certain Persons to Facilitate Communication

The Hospital may not require, coerce, or rely upon a family member, companion, advocate, patient, or friend of a patient and/or companion to interpret or facilitate communications between Hospital Personnel and a Patient and/or Companion. However, such person may be used to interpret or facilitate communications (1) in an emergency involving an

imminent threat to the safety or welfare of an individual or the public where there is no

interpreter available, or (2) where the individual with a disability specifically requests that the

accompanying adult interpret or facilitate communication, the accompanying adult agrees to

provide such assistance, and reliance on that adult for such assistance is appropriate under the

circumstances.  This provision in no way lessens the Hospital's obligation to provide appropriate

auxiliary aids as required under this Decree.

13.    Notice

    A.    The Hospital shall post and maintain signs of conspicuous size and print, in

conformance with the requirements of the ADA Standards for Accessible Design, 28 C.F.R. Part

36, App. A, at 4.30, at all Hospital admitting stations; the emergency department; nurse's

stations or in the patient and visitor elevator lobby on the same floor; and wherever a Patient's

Bill of Rights is required by law to be posted.  The signs shall include the international symbols

for "interpreters" and "TTY's."  Such signs shall state:

> *Are you or your companion deaf or hard of hearing and in need of assistance?  If so, please notify Hospital staff so that we can help.*
>
>> To ensure effective communication with patients, their family members, and companions who are deaf or hard of hearing, we provide auxiliary aids and services free of charge, such as: sign language and oral interpreters, TTY's, video remote interpreting (VRI), written materials, telephone handset amplifiers, pocketalkers, telephones compatible with hearing aids, and open and closed captioning of most Hospital programs.
>>
>> Please ask your nurse or other Hospital personnel for assistance, or contact _____.

The Hospital shall also include that statement in all future printings of its Patient Handbook (or

equivalent publication(s)), together with a description of the Hospital's complaint resolution

mechanism.

B.      The Hospital shall include the statement identified in Paragraph 13(A) in a conspicuous place on its Internet and Intranet websites.

C.      The Hospital shall publish a written policy statement regarding the Hospital's policy with respect to persons who are deaf or hard of hearing. The policy statement should include, but is not limited to, language that states: "If you recognize or have any reason to believe that a patient or companion of a patient is deaf or hard of hearing, you must advise the person that auxiliary aids such as sign language and oral interpreters, TTY's, video remote interpreting (VRI), written materials, telephone handset amplifiers, other sound amplifiers, assistive listening devices, telephones compatible with hearing aids, and closed captioning of Hospital programs will be provided free of charge. If an interpreter is requested and is selected as the appropriate auxiliary aid, you must also contact the Hospital's Scheduler at _____ to ensure that an interpreter is provided. If you have any questions regarding interpreter services or auxiliary aids, call _____." This statement shall also be posted in a prominent place on the Hospital's Intranet page.

The Hospital shall distribute this written policy statement within ninety (90) days of the effective date of this Decree to all Hospital Personnel with patient responsibility (including affiliated physicians with practicing or admitting privileges), and to all new Hospital Personnel with patient responsibility (including newly-affiliated physicians) upon their employment or affiliation with the Hospital. Thereafter, the Hospital shall distribute this written policy statement to all Hospital Personnel (including affiliated physicians) on an annual basis.

D.      Should there be any change to the contact information provided pursuant to Paragraphs 13(A)-(C), such information shall be updated within five (5) business days of the change.

25

E.     The Hospital shall ensure that any prior inconsistent notices, signs, materials or

documents that provide different information on how to secure an interpreter, whom to call

regarding interpreter services, or whom to contact for auxiliary aids are  removed or no longer

accessible.  In accordance with this requirement, the Hospital shall use best efforts to ensure the

removal of any unofficial notations or documents with inconsistent information.

14.    Training of Hospital Personnel

A.     Within ninety (90) days of the entry of this Decree, and annually thereafter, the

Hospital shall commence mandatory in-service training to active Hospital Personnel and staff

identified immediately below with the following objectives: to inform them of the new

procedures set forth in this Decree; to inform them of the procedures that they should follow in

order to arrange interpreter services or other auxiliary aids; to educate them that the Hospital

provides interpreters to Patients and/or Companions based on the Patient's and/or Companion's

wishes or if circumstances indicate that a Patient or Companion needs or desires an interpreter;

and to educate Hospital Personnel and staff on their obligations under this Decree.  The initial

training shall be completed within one hundred and fifty (150) days of the entry of this Decree.

The training shall include a presentation by an individual who is deaf and who addresses the

communication barriers that arise in interactions between hearing and hearing impaired

individuals.  This training shall be given to the following persons:

> a. Hospital employees with patient responsibility who work in the
> Emergency Department;
>
> b. Hospital employees with or likely to have patient responsibility,
> including, without limitation, the following categories and their
> equivalents: nurses, nurse's aides, therapists, social workers, case
> managers, and medical technicians; and
>
> c. Key Hospital employees not otherwise trained as provided above,
> including: all clinical directors and nursing supervisors; all senior-level

administrators; personnel who staff the Admission desk (or its equivalent for inpatient registration), the Central Registry desk (or its equivalent for outpatient registration), the General Information desk; all triage nurses and other triage professionals; administrative heads of each department in which communication with patients or their companions, families and friends is likely to occur; desk clerks in units or departments where such individuals are likely to have communications with patients or their companions, families and friends; personnel responsible for billing and insurance issues who routinely interact with patients and their companions, families, and friends; and those physicians with patient care responsibilities who are Hospital employees.

The above list excludes physicians affiliated with the Hospital who are not Hospital employees.

B.      1. All other Hospital Personnel who regularly receive incoming telephone calls from the public shall receive special instructions on using relay operators to make and receive telephone calls and shall receive training generally on the existence of the requirements of this Decree, the contact information for the Sign Language Services Manager, the Scheduler, and/or the individuals knowledgeable about this Decree, and the complaint resolution process referenced herein.

2. Within ninety (90) days of the effective date of this Decree, all registration and clinical contract staff who deal directly with patients and/or provide medical services, including physicians, nurses, physician's assistants, and admitting personnel, shall receive written instructions regarding which Hospital Personnel to contact if they encounter a patient or companion who appears to be deaf or hard of hearing. The Hospital shall also provide such written instructions to any new registration or clinical contract staff who deal directly with patients and/or provide medical services upon or prior to the commencement of their first shift at the Hospital. If at any point during this Decree, the percentage of hours for all registration and clinical contract staff who deal directly with patients and/or provide medical services (excluding physicians) at the Hospital exceeds 5% of the total employee hours at the Hospital in a given

quarter, the Hospital shall notify the Department of Justice via electronic mail and the Hospital shall be required to provide such contract staff with the training described in Paragraph 14(A) within ninety (90) days.

      C.     (1) The Hospital shall annually conduct one or more live training sessions on the communication needs of persons who are deaf or hard of hearing, and shall invite all physicians who are affiliated in any way with the Hospital (including, but not limited to, those doctors with admitting or surgical privileges) to attend.  The Hospital shall provide training materials that contain substantially similar information to what is presented at the live training sessions to any affiliated physician upon request.

           (2) Within ninety (90) days of the effective date of this Decree, the Hospital shall distribute a set of training materials to all affiliated physicians. These materials shall contain at least the Hospital's Policy Statement and any relevant forms, as well as a description of the Hospital's duty to provide auxiliary aids to Patients and/or Companions under this Decree and the procedures for arranging interpreter services.

      D.     For persons employed by the Hospital who begin their employment, or whose status becomes active (e.g., after their return from leave status), after the training sessions required in the immediately preceding provisions (Paragraphs 14 (A)-(C), the Hospital shall provide the training specified above within sixty (60) days after the individual's commencement or reactivation of service to the Hospital.

      E.     The Hospital shall maintain attendance records of all training conducted pursuant to this Decree, which shall include the names and respective job titles of the attendees, as well as the date, time and location of the training session.

15.    Miscellaneous

A.    The Hospital shall not deny equal services, accommodations, or other

opportunities to any individual because he or she is deaf or hard of hearing, or because of the

known relationship of a person with someone who is deaf or hard of hearing.

B.    The Hospital shall not retaliate against or coerce in any way any person who is

trying to exercise his or her rights under this Decree.

C.    Nothing in this Decree shall require the Hospital to violate its obligations under

HIPAA, any other applicable privacy or confidentiality law, or laws governing emancipated

minors.

16.    Specific Relief to Private Plaintiffs

Defendant agrees to pay a total sum of $95,000.00 (ninety-five thousand dollars) to

Private Plaintiffs Maribel Heisley and Stephen Andrew Heisley.  Payment of this sum by check

or wire transfer shall be rendered to Private Plaintiffs' counsel within fifteen (15) days after

Defendant's receipt of the signed releases attached hereto as Exhibits C-1 and C-2, which

counsel for Private Plaintiffs shall send via overnight mail to Defendant.

17.    Civil Penalty

Defendant shall issue a check or money order in the amount of $25,000 (twenty-five

thousand dollars), payable to the "U.S. Treasury" as a civil penalty, pursuant to 42 U.S.C.

§ 12188(b)(2)(C) and 28 C.F.R. § 36.504(a)(3). Counsel for Defendant shall deliver the check or

money order, via Federal Express, to counsel for the United States within ten (10) business days

of the effective date of this Decree.  This should be sent to:  Alberto Ruisanchez/Anne Langford,

USDOJ Disability Rights Section, 1425 New York Avenue, NW, 4th Floor, Washington, DC

20005.

## III. REPORTING AND ENFORCEMENT

18.   Implementation

     A.     The Hospital shall coordinate and oversee the Hospital's compliance with this

Decree, including coordinating and/or conducting trainings, maintaining and providing reports

and logs, and creating and modifying forms.

     B.     The Hospital shall designate one or more individuals who shall be available

twenty-four (24) hours per day, seven (7) days per week, to answer questions from and provide

assistance to Hospital Personnel regarding the use of auxiliary aids and services, and qualified

sign language and oral interpreters available under the Decree.  Such individuals shall know

where the appropriate auxiliary aids are stored and how to operate them.  The Hospital shall

circulate and post broadly within the Hospital the telephone numbers and e-mail addresses of the

individuals to contact for auxiliary aids and services, including a TTY telephone number that

may be called by Patients and/or Companions in order to obtain the assistance of such

individuals.

19.   Compliance Reports

     Six (6) months after the effective date of this Decree, and every six (6) months thereafter

during the term of this Decree, Defendant shall provide a written report ("Report") to the

Department of Justice regarding its efforts to comply with this Decree.

     Each Report shall provide the Maintenance Log required under Paragraph 7.  In the event

that the Hospital does not provide interpreter services to a Patient and/or Companion who has

requested such services (or upon whose behalf such services have been requested) or whose need

for such services has been identified by Hospital Personnel, the Report shall state all of the

Hospital's reasons for not providing interpreter services to the Patient and/or Companion, and

any documentation supporting such reasons. In the event that the Hospital does not provide interpreter services or auxiliary aids to a Patient and/or Companion in compliance with the timetable established in Paragraph 4, the Report shall provide all of the Hospital's reasons for not meeting the applicable timetable, and any documentation supporting such reasons.

The Report shall also contain copies of the attendance sheets identified in Paragraph 14(F) and records maintained pursuant to Paragraph 4(B). Hospital personnel shall maintain appropriate records, including, but not limited to, those described in this Decree, to document the information contained in the Report. The Hospital shall also provide to the Department of Justice, upon request, all invoices relating to the Hospital's provision of interpreter services.

All Reports shall comply with all applicable laws, regulations, and restrictions concerning privacy and confidentiality. However, to the extent that names or contact information has not been provided in such Reports, and the United States believes that it needs such information to determine whether a violation of this Decree has occurred, the United States may petition the Court for an Order requiring the Hospital to disclose such information. Defendant hereby agrees not to unreasonably oppose such request.

20.    Complaints

In addition to the requirements of Paragraph 8, during the term of this Decree, the Hospital shall notify the Department if any individual brings any lawsuit, written complaint, charge, or grievance alleging that the Hospital failed to provide interpretive services or auxiliary aids to Patients and/or Companions. Such notification must be provided in writing via Federal Express to: Alberto Ruisanchez/Anne Langford, USDOJ Disability Rights Section, 1425 New York Avenue, NW, 4th Floor Washington, DC 20005 within seven (7) days of when the Hospital has received notice of the allegation and will include, at a minimum, the nature of the allegation,

31

the name of the individual bringing the allegation, and any documentation possessed by the Hospital relevant to the allegation.

21.   Violation of Decree

The Department may review compliance with this Decree at any time and may enforce this Decree if the Department, on behalf of the United States, believes that this Decree or any requirement thereof has been violated. If the Department, on behalf of the United States, believes that this Decree or any portion of it has been violated, the Department shall give notice (including reasonable particulars) of such violation to the Hospital's Chief Executive Officer. Defendant must respond to such notice and/or cure such noncompliance as soon as practicable but no later than thirty (30) days thereafter, except that any event of noncompliance that prevents or restricts a patient from receiving urgent health care services must be cured without delay. The United States and the Defendant shall negotiate in good faith in an attempt to resolve any dispute relating thereto; if the parties are unable to reach a satisfactory resolution, the United States may file a Motion for Contempt for failure to comply with this Decree.

22.   Term of the Decree

This Decree shall become effective as of the date of the Court's entry of it and shall remain in effect for three (3) years from that date.

23.   Scope

This Decree does not purport to remedy any violations or potential violations of the ADA or Section 504 or any other federal law, other than the violations alleged in the United States' and Private Plaintiffs' Complaints in the above-titled action.

24.   <u>Binding</u>

This Decree shall be binding on Inova Fairfax, its agents, employees and officers.  In the event that Inova Health System seeks to transfer or assign all or part of its interest in any facility covered by this Decree, and the successor or assign intends on carrying on the same or similar use of the facility, then as a condition of sale, Inova Health System shall obtain the written accession of the successor or assign to any obligations remaining under this Decree for the remaining term of this Decree.

25.   <u>Non-waiver</u>

Failure by the United States to seek enforcement of this Decree pursuant to its terms with respect to any instance or provision will not be construed as a waiver to such enforcement with regard to other instances or provisions.

26.   <u>Provision of Decree</u>

The Defendant shall provide a copy of the Decree to any person upon request.

27.   <u>Authority</u>

The signatories represent that they have the authority to bind the respective parties identified below to the terms of this Decree.

SO **ORDERED** this  30  day of  march  , 2011.

_____ /s/ _____
Leonie M. Brinkema
United States District Judge

AGREED AND CONSENTED TO:

FOR THE PRIVATE PLAINTIFFS

_/s/ Wils. G. Barm___ for Christopher Hammond, by permission   Date:____March 28, 2011_____

Christopher W. Hammond (Va. Bar No. 76807)
Lewis S. Wiener
Wilson G. Barmeyer
SUTHERLAND ASBILL & BRENNAN LLP
1275 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 383-0100
Facsimile: (202) 637-3593
lewis.wiener@sutherland.com
wilson.barmeyer@sutherland.com

E. Elaine Gardner
WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS & URBAN AFFAIRS
11 Dupont Circle, N.W.; Suite 400
Washington, D.C. 20036
Telephone: (202) 319-1000
Facsimile: (202) 319-1010
elaine_gardner@washlaw.org

Marc P. Charmatz
Debra Patkin
NATIONAL ASSOCIATION OF THE DEAF
8630 Fenton Street, Suite 820
Silver Spring, MD 20910
Telephone (301) 587-7732
Facsimile (301) 587-1791
marc.charmatz@nad.org

FOR THE UNITED STATES:

ERIC H. HOLDER, JR.
Attorney General of the United States

NEIL H. MACBRIDE
United States Attorney
Eastern District of Virginia

THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division

SAMUEL R. BAGENSTOS
Deputy Assistant Attorney General
Civil Rights Division

RENEE WOHLENHAUS, Acting Chief
ALLISON J. NICHOL, Deputy Chief
Disability Rights Section
Civil Rights Division

STEVEN E. GORDON
Assistant United States Attorney
United States Attorney's Office
Eastern District of Virginia
Justin W. Williams U.S. Attorney's Bldg.
2100 Jamieson Avenue
Alexandria, Virginia 22314
Telephone: 703-299-3817
steve.gordon@usdoj.gov

Date:__March 28, 2011_____

ALBERTO RUISANCHEZ
ANNE E. LANGFORD
Trial Attorneys
Disability Rights Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue NW - NYA
Washington, D.C. 20530
Telephone: (202) 353-0368
Facsimile: (202) 305-9775
Email: alberto.ruisanchez@usdoj.gov
Email: anne.langford@usdoj.gov
Attorneys for the United States

35

FOR DEFENDANT:

Thomas J. Flaherty (Va. Bar No. 16567)
Peter J. Petesch
Counsel for Defendant
Littler Mendelson, P.C.
1650 Tysons Boulevard, Suite 700
McLean, Virginia 22102
Tel.: 703.442.8425
Fax.: 703.442.8428
tflaherty@littler.com
ppetesch@littler.com

Date: _____March 28, 2011_____

## Exhibit A

## Deaf or Hard of Hearing Communication Request Form

We ask this information so that we can communicate effectively with patients and/or companions who are deaf or hard of hearing. All communication aids and services are provided FREE OF CHARGE. Each person requesting communication aids should complete a separate form. If you need further assistance, please contact _____.

_____    _____
**Patient's Name**                                  **Medical Record #**

_____
**Name of Person with Disability (if different than patient)**

**Nature of Disability:**

❑ Deaf     ❑ Hard of Hearing     ❑ Speech Impairment          ❑ Other: _____

**Relationship to Patient:**

❑ Self     ❑ Family member     ❑ Friend          ❑ Other: _____

Please select the communication aid(s) you would like to assist you in communicating with Hospital staff. Your requests will be carefully addressed by Hospital staff.

❑ Interpreter on-site ➡     ○ American Sign Language (ASL)    ○ Signed English    ○ Oral interpreter

❑ Video Remote Interpreter *(NexTalk)* ➡     ○ American Sign Language (ASL)

❑ TTY/TDD (text telephone)

❑ Assistive listening device (sound amplifier)

❑ Telephone handset amplifier
❑ Telephone compatible with hearing aid
❑ Flasher for incoming calls (in patient's room)
❑ Other.  Explain:
_____

❑ **No.** I do not use sign language and/or do not use interpreters.

❑ **No.** I prefer to have only family members/friends help with communication.

    Name of family member/friend:_____

❑ **No.** Please state other reason:_____.


**If you requested both an interpreter on-site and a video remote interpreter above, do you have a**

**preference between the two?**      ❑ Yes, I prefer an interpreter on-site

                                     ❑ Yes, I prefer video remote interpreter

                                     ❑ No, I do not have a preference between the two


If you have any questions, please call _____ (voice), _____ (TTY).


**Completed by:** _____
                **(Please print name)**


**Signature:**_____


**Date:** _____        **Time:** _____


    ** If at any point during your Hospital visit, you wish to change any of the answers to the questions
                    on this form, please notify _____.


o  Anticipated period of time the patient will be in the hospital (if known):_____
o  ( dx date)

38

o The nature of the patient's condition, including its seriousness and stability
o Likelihood of needing to communicate with the Patient or Companion at unforeseen times:

o In this unit, the most common hours that Hospital Personnel will need to communicate with patients or companions (list out in two hour time frames):_____
o The availability of 24-hour interpreter services free of charge.
o Other assistive devices which may be available.

**Exhibit B**

## Interpreter Schedule

**Established for:**   _____
(Patient/Companion Name)

**Patient Name:**   _____

**Location (Room/Bed):**   _____

| Date | Times that Interpreter Will be Provided |
|------|------------------------------------------|
|      |                                          |
|      |                                          |
|      |                                          |
|      |                                          |
|      |                                          |
|      |                                          |
|      |                                          |
|      |                                          |
|      |                                          |
|      |                                          |
|      |                                          |
|      |                                          |
|      |                                          |

Included in this schedule are the planned times when you have requested an on-site interpreter.

I,_____, have approved the Interpreter Schedule above and have no objection to it.  I am aware that I can modify this Schedule by contacting _____.
I have been provided a copy of this Schedule.

_____
**Signature**

_____
**Date & Time**

40

**Exhibit C-1**

## <u>RELEASE OF ADA AND REHABILITATION ACT CLAIMS</u>

For and in consideration of the acceptance of relief offered to me by Inova Health System pursuant to a Consent Decree between Maribel Heisley and Stephen Andrew Heisley, the United States of America, and Inova Health System: I, Maribel Heisley, release and discharge Inova Health System, its subsidiaries, affiliates, insurers, successors and assigns, and its current, past, and future officers, directors, shareholders, employees, and agents, of and from all legal and equitable claims under, arising out of, or related to the complaints concerning Inova Health System's failure to provide effective communication in violation of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act, filed in the United States District Court for the Eastern District of Virginia, Case No. 1:10-cv-714-LMB/IDD.

This Release will be considered null and void in the event that Inova Health System fails to send a check or wire transfer in the amount specified in the Consent Decree within fifteen (15) days of receipt of this signed Release.

I acknowledge that I have had the opportunity to review the terms of this Release with my attorneys.

I HAVE READ THIS RELEASE AND UNDERSTAND THE CONTENTS THEREOF AND I EXECUTE THIS RELEASE OF MY OWN FREE ACT AND DEED.

Signed this _____ day of _____, 2011.


_____
Maribel Heisley


Sworn and subscribed to before me this
_____ day of _____, 2011.


Notary public

My commission expires:_____

41

**Exhibit C-2**

## <u>RELEASE OF ADA AND REHABILITATION ACT CLAIMS</u>

For and in consideration of the acceptance of relief offered to me by Inova Health System pursuant to a Consent Decree between Maribel Heisley and Stephen Andrew Heisley, the United States of America, and Inova Health System: I, Stephen Andrew Heisley, release and discharge Inova Health System, its subsidiaries, affiliates, insurers, successors and assigns, and its current, past, and future officers, directors, shareholders, employees, and agents, of and from all legal and equitable claims under, arising out of, or related to the Complaint concerning Inova Health System's failure to provide effective communication in violation of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act, filed in the United States District Court for the Eastern District of Virginia, Case No. 1:10-cv-714-LMB/IDD.

This Release will be considered null and void in the event that Inova Health System fails to send a check or wire transfer in the amount specified in the Consent Decree within fifteen (15) days of receipt of this signed Release.

I acknowledge that I have had the opportunity to review the terms of this Release with my attorneys.

I HAVE READ THIS RELEASE AND UNDERSTAND THE CONTENTS THEREOF AND I EXECUTE THIS RELEASE OF MY OWN FREE ACT AND DEED.


Signed this _____ day of _____, 2011.


_____
Stephen Heisley


Sworn and subscribed to before me this
_____ day of _____, 2011.


Notary public

My commission expires:_____